UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID GORDON OPPENHEIMER, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 25-cv-10363-ADB |
| DCB AND ASSOCIATES, LLC, DOUGLAS BRAY, and JAY SMITH, | * * * | |
| Defendants. | * * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff David Gordon Oppenheimer ("Oppenheimer") alleges that Defendant Jay Smith ("Smith") unlawfully used Oppenheimer's photograph on his LinkedIn page.  In this action, he seeks damages and injunctive relief against Smith; Smith's employer, DCB and Associates, LLC ("DCB"); and DCB's manager, Douglas Bray ("Bray") (collectively, "Defendants").  [ECF No. 1 ¶¶ 7–36].  Defendants assert a counterclaim seeking damages and attorney fees from Oppenheimer pursuant to Massachusetts General Laws chapter 93A, [ECF No. 9 at 5–7], which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).  Before the Court are Oppenheimer's motions for partial summary judgment on liability on all counts of the Complaint, [ECF No. 12], and to dismiss Defendants' counterclaim, [ECF No. 20].  For the following reasons, Oppenheimer's motion for partial summary judgment, [ECF No. 12], is **DENIED**, and his motion to dismiss Defendants' counterclaim, [ECF No. 20], is **GRANTED**.

I.      **BACKGROUND**

      A.      **Factual Background**

Oppenheimer is a professional photographer.  [ECF No. 17-1 ¶ 7].  DCB, which also conducts business under the name "Century 21 Cityside," is a Massachusetts limited liability company with a principal place of business in Boston.  [ECF No. 1 ¶ 2]; [ECF No. 15 at 1].  At all relevant times, Bray was DCB's sole manager, [ECF No. 1 ¶ 3]; [ECF No. 15 at 1], and Smith was a sales associate for DCB.  [ECF No. 1 ¶ 4]; [ECF No. 15 at 1].

In 2018, Oppenheimer, who is experienced in aerial photography, chartered a helicopter with its rear doors removed to take pictures of Boston and its surroundings.  [ECF No. 17-1 ¶ 7].  During that trip, he took a photograph of downtown Boston, [id. ¶ 8]; accord [id. ¶ 3]; see [ECF No. 1-1 (the photograph)], which he registered with the United States Copyright Office prior to publishing it.  [Id. ¶ 3].  Oppenheimer alleges that Smith copied that photograph and unlawfully used it on his LinkedIn page.  [ECF No. 1-3 (alleged infringing use)]; [ECF No. 1 ¶ 10].  Defendants deny that Smith used the photograph, [ECF No. 15 at 2], and, in the alternative, allege that if Smith did use the photograph, he fell victim to an unlawful deceptive trade practice, because Oppenheimer is primarily a "litigation entity" who cultivates copyright-infringement claims by "tak[ing] generic photographs that appear to be like other royalty-free photographs on the internet," publishing "unmarked copies" of them, "wait[ing] for unwary and unknowing individuals to use [them]," and then "litigating with maximum aggression to obtain unwarranted damages."  [ECF No. 15 at 6–7].

      B.      **Procedural History**

Oppenheimer filed his complaint on February 12, 2025.  [ECF No. 1].  Defendants answered on May 2, 2025, and asserted a counterclaim against Oppenheimer.  [ECF No. 9].  On

May 20, 2025, Oppenheimer moved to dismiss the counterclaim, [ECF No. 10], and moved for partial summary judgment, [ECF No. 12].  On June 3, 2025, Defendants filed an amended counterclaim, [ECF No. 15], mooting Oppenheimer's motion to dismiss, [ECF No. 16].  Defendants opposed Oppenheimer's motion for partial summary judgment on June 10, 2025, [ECF No. 17], and Oppenheimer filed a reply on June 24, 2025, [ECF No. 18].  Oppenheimer also filed a motion to dismiss the amended counterclaim, [ECF No. 20], which Defendants opposed on July 8, 2025, [ECF No. 22].  Now ripe for decision are Oppenheimer's motion for partial summary judgment, [ECF No. 12], and his motion to dismiss Defendants' amended counterclaim, [ECF No. 20].

## II.    SUMMARY JUDGMENT

### A.    Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if "its existence or nonexistence has the potential to change the outcome of the suit," Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir. 1995)), and it is genuinely disputed if "the evidence of record permits a rational factfinder to resolve it in favor of either party," id. at 4–5 (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  "[T]he moving party must direct [the Court] to specific evidence in the record that would be admissible at trial," Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015), and show that the evidence either "negates an essential element of the non-moving party's claim," id. (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)), or "demonstrate[s] that the non-moving party will be unable to carry its burden of persuasion at trial," id. at 5 (quoting Carmona, 215

F.3d at 132).  Once the moving party has identified such evidence, the burden shifts to the party opposing summary judgment to "demonstrate that a trier of fact could reasonably resolve [each issue on which she would bear the burden of proof at trial] in her favor."  Borges, 605 F.3d at 5 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

The Court reviews "the entire record in the light most hospitable to the party opposing summary judgment," Podiatrist Ass'n v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), and draws all inferences "in the light most favorable to the party opposing the motion," Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)), but it will not credit "conclusory allegations, improbable inferences, [or] unsupported speculation," Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (quoting Medina-Munoz, 896 F.2d at 8).

### B.    Discussion

Oppenheimer asserts two theories of liability: copyright infringement, see 17 U.S.C. §§ 501–04, and unlawful removal of copyright management information, see 17 U.S.C. § 1202. At the outset, however, each theory requires Oppenheimer to prove that the photograph used by Smith was, in fact, the photograph in which Oppenheimer owns a copyright and which he had protected with copyright management information.  There is a genuine issue of material fact as to that point.  In an affidavit, Smith says that the image he downloaded "was a free, generic aerial photograph of Boston" that did not have "any copyright warnings or other markings," that "nothing on the image or the website [from which it was downloaded] . . . indicated" that the image was not royalty-free, and that "Mr. Oppenheimer is mistaken" that the "photograph was

4

his." [ECF No. 17-9 ¶¶ 8, 11, 30, 31].  By contrast, unlike the image that Smith claims to have downloaded, Oppenheimer claims in his affidavit that his image always appeared either (1) "clearly marked with [a] copyright notice on the lower right corner of the Photograph itself," accompanied by a statement of copyright "in the caption adjacent to the Photograph;" (2) with "a Fine Art America watermark on the images . . . in addition to copyright notices in the captions;" or (3) with "a notice of copyright . . . superimposed and displayed on the face of each Photograph." [ECF No. 12-2 ¶¶ 8, 11, 12].  The contradiction between Oppenheimer's description of the ever-present copyright warnings on his image and Smith's recollection that there were no copyright warnings on the image he downloaded creates a disputed issue of material fact, precluding summary judgment, as to whether Smith downloaded Oppenheimer's copyrighted image or a different image.[1]  Though Oppenheimer states that he found Defendants' alleged unauthorized use of his image "with a manual Google Images' search," [ECF 12-2 ¶ 14], he has not elaborated on that methodology or otherwise established, beyond dispute, that the image used by Smith was Oppenheimer's.  Accordingly, because a genuine dispute remains as to a fact that is a prerequisite for Oppenheimer to recover under either theory, summary judgment will not enter for Oppenheimer on liability.

III.     **MOTION TO DISMISS**

      A.     **Legal Standard**

A counterclaim must be dismissed if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff must set forth (1) "a short and

---

[1] Defendants further note, by way of example, that there are numerous similar images available online, see [ECF No. 17-3 at 2]; [ECF No. 17-4 at 2], and the Court observes that in light of those examples, a comparison of the image owned by Oppenheimer, see [ECF No. 1-1], with the screenshot of Smith's LinkedIn, see [ECF No. 1-3], hardly speaks for itself.

plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a).  The facts alleged, when taken together, must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Detailed factual allegations are not required, but a pleading must set forth "more than labels and conclusions." Twombly, 550 U.S. at 555).  Legal conclusions couched as facts or "[t]hreadbare recitals of the elements of a cause of action" will not suffice.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### B.    Discussion

Defendants allege that Oppenheimer engaged in a "deceptive . . . business practice," [ECF No. 15 at 8], by intentionally "trapping people into allegations of copyright infringement," [id. at 7], and then "assert[ing] excessively high demands against unwary individuals that are less than what would be required to defend themselves in a litigation," [id.], and less than what he would be likely to recover at trial, see [id. at 8 (collecting cases in which Oppenheimer's alleged damages were not found to be substantiated)].  Defendants contend that Oppenheimer is best understood as a "litigation entity," [id. at 6], and that his conduct violates Mass. Gen. Laws ch. 93A, [id. at 9], which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," Mass. Gen. Laws ch. 93A, § 2(a).  As relevant here, the statute provides a private right of action to a person who "engages in the conduct of any trade or commerce and who suffers any loss of money or property . . . as a result of the use or employment by another person who engages in any trade or commerce of an unfair

method of competition or an unfair or deceptive act or practice." Mass. Gen. Laws ch. 93A, § 11.

To make out a claim under chapter 93A, a plaintiff must show a "causal relationship" between "alleged unfair acts" and a "claimed loss."[2] Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 491 (Mass. 2004) (quoting Mass. Farm Bur. Fed'n, Inc. v. Blue Cross of Mass., Inc., 532 N.E.2d 660, 665 (Mass. 1989)). Defendants allege that Oppenheimer's "acts or practices have led to actual damages" to them, [ECF No. 15 at 8], but they do not state exactly what those damages are or how Oppenheimer's alleged conduct caused them. Nonetheless, if a party is "force[d] . . . to incur attorney's fees" by an act or practice in violation of chapter 93A, those litigation expenses constitute actual damages for purposes of stating a chapter 93A claim, even if the party has not suffered independent financial harm. Columbia Chiropractic Grp., Inc. v. Trust Ins. Co., 712 N.E.2d 93, 96 (Mass. 1999) (permitting recovery on defendant's chapter 93A counterclaim where plaintiff was unlawfully attempting to recover on "unreasonable or unnecessary medical bills"); see also Vt. Mut. Ins. Co. v. Poirier, 189 N.E.3d 306, 312 n.8 (Mass. 2022) ("If a c. 93A violation forces someone to incur legal fees and expenses that are not simply those incurred in vindicating that person's rights under the statute, those fees may be treated as actual damages in the same way as other losses of money or property." (quoting Siegel v. Berkshire Life Ins. Co., 835 N.E.2d 288, 292 (Mass. App. Ct. 2005))).

Though Defendants' pleading could be clearer on this point, the Court understands Defendants to be alleging that the costs and fees they have incurred in defending the underlying

---

[2] Though Defendants argue strenuously that Oppenheimer is operating an abusive litigation entity, see [ECF No. 15 at 6–8], and Oppenheimer's motion to dismiss is devoted largely to rejecting that contention, see [ECF No. 21 at 4–10], the nature of Oppenheimer's business is not dispositive of whether Defendants have stated a claim under chapter 93A.

copyright lawsuit constitute damages under chapter 93A.  See [ECF No. 15 at 9 (seeking recovery of "costs and attorneys' fees")]; [id. at 6 (alleging that Oppenheimer's "litigating with maximum aggression to obtain unwarranted damages" is part of the challenged deceptive conduct)].  Massachusetts law recognizes the viability of such claims.  Given that Oppenheimer's initiation of this action is plainly the but-for cause of Defendants incurring the attorney fees and costs that they seek to recover, the Court is satisfied that causation, too, has been adequately pleaded.

It remains for the Court to determine whether Defendants have adequately pleaded an unfair or deceptive act or practice in the form of Oppenheimer's allegedly predatory litigation tactics.  Defendants advance two theories.  Their primary theory is that Oppenheimer trolls for unwitting businesses and attempts to trap them into infringing his copyrights by "provid[ing] unmarked copies of his photographs as well as marked copies."  [ECF No. 15 at 7]; see also [ECF No. 22 at 15 ("Plaintiff intentionally . . . induc[es] businesses to engage in a business relationship that is unknowingly exposing those businesses to copyright infringement allegations, which lead to unwarranted demands.")].  Defendants' second theory, which they mention only in passing, is that the lawsuit itself amounts to baseless litigation or an abuse of the judicial process. See [ECF No. 22 at 15 & n.3].

The Court begins with the trolling theory.  Though Defendants do not identify any cases in which such a business strategy has previously been recognized as unfair or deceptive pursuant to chapter 93A, they argue that it satisfies the test set forth by the Supreme Judicial Court for determining whether a practice is unfair within the meaning of the statute: namely that "the practice must (1) be 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness;' (2) be 'immoral, unethical, oppressive, or unscrupulous;' and

8

(3) 'cause[] substantial injury to consumers (or competitors or other businessmen).'" Anoush

Cab, Inc. v. Uber Techs., Inc., 8 F.4th 1, 17 (1st Cir. 2021) (quoting PMP Assocs., Inc. v. Globe

Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)); see [ECF No. 22 at 15–16].

Defendants do not explain how or why Oppenheimer's conduct satisfies any of the

elements of the PMP test; they merely contend that "[a]t this early stage, Defendants have at

least shown that Plaintiff's conduct can be considered under this standard unfair, oppressive, and

causing substantial injury." [ECF No. 22 at 16].  The Court is not persuaded.  In order to state a

claim, Defendants must—but have failed to—articulate how the facts that they have already

alleged would amount, if proven, to conduct that is unlawful under chapter 93A as a matter of

law.  Defendants' legal argument is lacking.  They have not identified, for example, any

"common-law, statutory, or other established [basis]" for concluding that Oppenheimer's alleged

conduct was unfair, Anoush Cab, 8 F.4th at 17, and the Court is skeptical that such basis exists,

given that Oppenheimer's right to pursue the unlawful reproduction of his images is protected by

federal copyright law.  See 17 U.S.C. § 501(b).  Further, the Court is not aware of any case in

which a copyright litigant's trolling behavior alone, without any additional misconduct, was held

to constitute an independent legal wrong.  Defendants' conclusory arguments, therefore, are not

sufficient to make out the somewhat novel claim that a copyright owner intentionally distributing

his or her images in a manner calculated to foment copyright infringement lawsuits violates

chapter 93A.

The Court turns next to Defendants' arguments related to Oppenheimer's use of the

judicial process.  As the parties agree, see [ECF No. 21 at 12]; [ECF No. 22 at 15 & n.3 (noting

that Defendants' primary claim challenges Plaintiff's "business practices," but agreeing that a

baseless-litigation claim should be judged by this standard)], to succeed on a chapter 93A claim

arising out of a meritless lawsuit, the party asserting the 93A claim must show that the claims in the underlying litigation were "groundless" and that the litigant's actions were motivated by a "pernicious purpose collateral to winning the suit." Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1514 (1st Cir. 1989). Defendants argue that Oppenheimer is using litigation to manipulate or punish those who will not settle his claims. [ECF No. 22 at 15 n.3]. Even assuming that using the threat of litigation to coerce an unjustified out-of-court settlement could violate chapter 93A, Defendants' amended counterclaim points only to demands and damage awards in other cases involving Oppenheimer, rather than pleading facts that would establish such conduct here. [ECF No. 15 at 6–8]. They allege that Oppenheimer "asserts excessively high demands against unwary individuals that are less than what would be required to defend themselves in a litigation," [ECF No. 15 at 7], and that he "seeks unwarranted damages under the DMCA by asserting that defendants [in other cases], like those in this case, violated the DMCA and owe [Oppenheimer] thousands in damages for actions that [the] defendants did not take," [id. at 8]. Apart from a passing reference to themselves in the material just quoted, Defendants' counterclaim is devoid of claims about Oppenheimer's particular actions in relation to them, and their general allegations about Oppenheimer's business model do not plead a cognizable 93A claim.[3]

---

[3] Because it concludes that Defendants' factual pleadings fail to state a claim under chapter 93A, the Court does not reach Oppenheimer's argument that the Copyright Act preempts a chapter 93A claim under these circumstances, see [ECF No. 21 at 10–11].

## IV.      CONCLUSION

For the foregoing reasons, Oppenheimer's motion for partial summary judgment, [ECF No. 12], is **DENIED**, and Oppenheimer's motion to dismiss Defendants' counterclaim, [ECF No. 20], is **GRANTED**.

**SO ORDERED.**

March 19, 2026                                                    */s/ Allison D. Burroughs*
                                                                        ALLISON D. BURROUGHS
                                                                        U.S. DISTRICT JUDGE

11